People v Manley (2021 NY Slip Op 06814)





People v Manley


2021 NY Slip Op 06814


Decided on December 07, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 07, 2021

Before: Renwick, J.P., Mazzarelli, Singh, Mendez, Higgitt, JJ. 


Ind No. 3572/16 Appeal No. 14762 Case No. 2018-03074 

[*1]The People of the State of New York, Respondent,
v
Christian Manley, Defendant-Appellant.


Robert S. Dean, Center for Appellate Litigation, New York (Matthew Christiana of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Susan Gliner of counsel), for respondent.



Judgment, Supreme Court, New York County (Robert M. Mandelbaum, J.), rendered April 3, 2018, convicting defendant, after a jury trial, of criminal possession of a weapon in the second degree, and sentencing him, as a second violent felony offender, to a term of 12 years, unanimously modified, as a matter of discretion in the interest of justice, to reduce the sentence to 8 years, and otherwise affirmed.
The verdict was based on legally sufficient evidence and was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]). The jury could have reasonably found that defendant knew there was a loaded pistol in his backpack at the time he put the bag on a bench in a courtyard that, according to police testimony, was controlled by defendant's gang (see generally People v Reisman, 29 NY2d 278, 285-286 [1971], cert denied 405 US 1041 [1972]), In making that finding, the jury could have reasonably discredited the part of defendant's statement to the police in which he claimed someone placed the pistol in the backpack without his knowledge while he was away from it. Moreover, even accepting defendant's claim that he did not become aware of the pistol until he returned to the backpack later, the evidence still established that he then remained in knowing and voluntary constructive possession of the pistol, acting jointly with persons who can be reasonably inferred to be fellow gang members (see People v Manini, 79 NY2d 561, 573 [1992]; People v Tirado, 38 NY2d 955 [1976]; People v Dunbar, 129 AD3d 419, 419 [2015], lv denied 26 NY3d 1008 [2015]).
The court properly denied defendant's request for a jury charge on voluntary possession, that is, the requirement that defendant "was aware of his physical possession or control [of the pistol] for a sufficient period to have been able to terminate the possession" (Penal Law § 15.00[2]). Viewing the evidence in the light most favorable to defendant, there was no reasonable view that defendant's possession of the pistol "was so fleeting that he did not have time to affirmatively end the possession" (People v J.L., 36 NY3d 112, 120 [2020]). Even accepting defendant's claim that he first became aware of the pistol in his backpack when he returned to it and opened it to get his phone charger, and then held the backpack for only a matter of seconds before handing it to another person, and even assuming that such time was sufficiently "fleeting," there is still no reasonable view of the evidence other than that he remained in constructive possession of the pistol, both individually and jointly with his fellow gang members. Under the evidence presented, his act of giving the backpack to another person cannot be reasonably viewed as terminating defendant's possession.
The court providently exercised its discretion in allowing expert testimony on what the expert described as "community guns." This concept involved the methods used by gangs to have their shared firearms ready to use while avoiding [*2]being caught in possession of these weapons, including by means of keeping firearms outdoors in closed containers under their constant observation but not on anyone's person. This testimony was necessary to explain the unusual behavior of defendant and persons who could be inferred to be his fellow gang members regarding their handling of the backpack containing the pistol, including evidence that defendant left the backpack unattended in the gang-controlled courtyard for two hours. These matters went beyond the general legal concept of constructive possession, they were not within the jurors' ordinary knowledge, and they tended to prove defendant's knowing and voluntary possession of the pistol (see People v Brown, 97 NY2d 500, 506-507 [2002]; People v Carroll, 95 NY2d 375, 387 [2000]; De Long v County of Erie, 60 NY2d 296, 307 [1983]).
The admission of testimony regarding the murder of the leader of defendant's gang was error. The court allowed it to establish motive for the gun possession but the claim that defendant intended to use the gun to commit a retaliatory murder was speculative. Nevertheless, the error was harmless due to the overwhelming evidence of guilt (see People v Crimmins, 36 NY2d 230, 240-241 [1975]).
Defendant abandoned, or otherwise failed to preserve, his remaining arguments regarding evidence of his gang activity, and we decline to review them in the interest of justice. As an alternative holding, we find no basis for reversal.
During summation, it was inappropriate for the prosecutor to squeeze the trigger of the pistol to emphasize its operability. However, to the extent this may have been inflammatory, this single instance of impropriety did not deprive defendant of a fair trial. By failing to object, by making generalized objections, and by failing to request further relief after objections were sustained, defendant failed to preserve any of his remaining challenges to the summation, and we decline to review them in the interest of justice. As an alternative holding, we find them unavailing (see People v Overlee, 236 AD2d 133 [1st Dept 1997], lv denied 91 NY2d 976 [1992]; People v D'Alessandro, 184 AD2d 114, 118-119 [1st Dept 1992], lv denied 81 NY2d 884 [1993]).
We find the sentence excessive to the extent indicated.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 7, 2021